The STATE v. GEORGE V. PARR, Appellant.

Division Two, December 22, 1922.

1. **EVIDENCE: One Entire Transaction: Testimony Concerning Co-Indictee's Shooting Another.** Where two crimes are committed under such circumstances as to constitute one continuous transaction in the accomplishment of a common design, and the facts are so interrelated that the crimes are concurrent, full proof of one cannot be made without showing the facts tending to establish the other, and all the relevant facts are to be regarded as a part of the *res gestae.* Where two deputy sheriffs were attempting to arrest the defendant and two others, testimony in the trial of defendant for the murder of one of them that, a few minutes after deceased was killed, his co-indictee shot the other while he was restraining the other two, is competent.

2. ———: **Confession: Question for Jury.** The testimony relating to the issue whether statements made by defendant to police officers were voluntary or involuntary being conflicting, it is proper to submit the testimony, under appropriate instructions, to the jury, whose province it then becomes to determine to what part of it credence should be given.

3. ———: **Demonstrative: Physical Objects.** Demonstrative evidence, or a physical object connected with the crime that may prove explanatory of other facts or justify inferences to be drawn from them, is admissible, in furtherance of justice, subject to the discretion of the trial court, exercised with a proper regard for the rights of the defendant. It was not error to admit in evidence what purported to be a thirty-two caliber pistol bullet cut out of the automobile in which the officers were riding at the time they were killed, the evidence showing that the automobile had been properly guarded from the time the shooting occurred and previously contained no bullet holes, and it being shown that defendant carried a pistol of that caliber and was present at the shooting.

4. ——: Conspiracy: **Order of Proof.** The rule that proof of a conspiracy must first be made before the acts or declarations of a conspirator can be admitted against the others is not inflexible. The order of proof is largely within the discretion of the trial court, and it will not be ruled that no conspiracy was shown merely because acts and statements of defendant were proven prior to the proof of a common design.

5. ——: ——: **Sufficient Evidence: Circumstantial.** A conspiracy may be established by circumstantial evidence; and evidence that defendant and two others were riding over a county in an automobile at midnight; that they were armed; that another automobile drew up beside theirs, in which were two men; that these two men announced they were officers, and the defendant and his associates saw the officers' stars; that the officers commanded them to hold up their hands, whereupon the three responded with a fusillade of pistol shots, established a common design to resist arrest, and authorized the admission in evidence of a statement of defendant that their purpose was, if their arrest was attempted, to "shoot their way out," although defendant, who had a pistol, testified that he did not shoot at all.

6. ——: ——: **To Commit Another Crime: Culmination in Murder: Instruction.** The purpose for which a conspiracy was formed, whether to resist arrest or commit robbery or other felony, is immaterial. If it culminated in murder evidence to establish a common design to violate the law is admissible in the prosecution of one of the conspirators for the murder, as an incident of the crime, although not pleaded; and an instruction telling the jury that, although the fatal shot may have been fired by a co-indictee, if defendant was present, aiding, assisting and abetting him, etc., they are authorized to find defendant guilty of murder, is proper. In such circumstances, his guilt does not depend upon the firing of the fatal shot.

7. **TRIAL: Examination of All Witnesses.** The failure of the prosecuting attorney to examine all the eye witnesses to the homicide is not error. That old common-law requirement has been abrogated by the constitutional provisions guaranteeing to an accused compulsory process for the attendance of all his witnesses.

Appeal from St. Louis Circuit Court.—*Hon. J. W. McElhinney,* Judge.

AFFIRMED.

*Hudson & Hudson,* for appellant.

(1)   The court erred in allowing the State to offer testimony concerning the movements of Willis Millard after the death of Conrey and after Parr and Burke had been placed under arrest by Corner, for if the conspiracy existed it had been accomplished and ended with the killing of Conrey.   State v. Shout, 263 Mo. 360; State v Babbitt, 242 Mo. 273;   State v. Beaucleigh, 92 Mo. 490. (2)   The confession alleged to have been made by the defendant herein to the police was not voluntary, and was obtained, if obtained at all, through the exercise of the third degree.   State v. Ellis, 242 S. W. 952.   (3) The court erred in permitting the State to introduce a purported 32 caliber bullet, which they alleged was cut from the frame work of the Ford machine in which Conrey was riding, when it was shown that the bullet was not found until late the next day and it was shown that the machine had been left unguarded from the time of the killing until the bullet was extracted.   (4)   The court erred in refusing to give the instruction asked for by the defendant at the close of the State's case, as no conspiracy was proven.   State v. Porter, 199 S. W. 161; State v. Austin, 183 Mo. 478.   (5)   The court erred in not giving the instruction asked for by defendant at the close of the whole case, as the evidence was of such a nature that the court should have decided as a matter of law that no conspiracy existed.   (c) _ Instruction five should not have been given because it is not supported by the evidence, as there was no evidence of conspiracy or that Parr aided or abetted or encouraged Millard in any manner.   State v. Porter, 199 S. W. 161.   (7)   Instruction eleven is not responsive to the issues and is totally erroneous.   This instruction is so arranged that, while seeming to favor defendant, it caused the jury to believe appellant Millard and Burke (who was not indicted), were guilty of a conspiracy to kill Conrey, which makes the instruction broader than the pleadings. (8)   Instruction D-3 should have been given by the court

State v. Parr.

on behalf of the defendant because of the testimony of Burke. (9) Defendant was entitled to the instructions asked for by him as it was the duty of the court to allow the defendant to present his theory of the case to the jury. Instruction D-6 should have been given as it was a question for the jury whether or not Parr had a weapon with him or knew the parties who approached were officers, and the conspiracy not having been proven in such a manner as to overcome the presumption in defendant's favor, and this instruction is bottomed upon the testimony of the defendant. State v. Webb, 205 S. W. 187; State v. Douglas, 258 Mo. 291. (10) Defendant should have been granted a new trial because the prosecuting attorney failed, neglected and refused to use David Burke, Sidney McKay, John Wm. McKay and Edith Callem in the trial of the case, and with the exception of David Burke the names of the witnesses were not known to defendant, and had their testimony been before the jury there is no doubt but what it would have resulted in the acquittal of this defendant. 12 Cyc. 571.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) Testimony tending to show that a co-defendant killed a second officer immediately after he killed the one for which appellant was being tried was competent. State v. Hyde, 234 Mo. 226; State v. Spaugh, 200 Mo. 594; State v. Tatman, 264 Mo. 357, 371; State v. Sherman, 264 Mo. 374, 382; State v. McKee, 28 Fed. Cas. No. 15,685; Commonwealth v. Kelly, 186 Mass. 403; People v. Becker, 215 N. Y. 126; 2 Wharton's Crim. Ev. sec. 702; State v. Sanders, 76 Mo. 36; 16 C. J. 141. (2) The statement made by appellant to the police officers was a voluntary one and evidence as to what appellant said was properly admitted. State v. Moore, 160 Mo. 460; State v. Jones, 171 Mo. 406; State v. Stebbins, 188 Mo. 387, 396; State v. Barrington, 198 Mo. 23, 109. (3) It was not error to permit proof of a statement made

by the defendant without first proving that he had entered into a conspiracy with another to commit the crime. Sec. 3687, R. S. 1919; State v. Orrick, 106 Mo. 111; State v. Gos, 235 Mo. 307, 323. (4) The prosecution is not required to call all the eyewitnesses to a crime. 28 R. C. L. par. 175, p. 584. (5) Proof of a conspiracy may be made though the indictment does not charge a conspiracy. State v. Kennedy, 177 Mo. 98, 118; State v. Carroll, 232 S. W. 701; State v. Sykes, 191 Mo. 62, 78; Section 3687, R. S. 1919; State v. Orrick, 106 Mo. 119. (6) The instructions given at the request of the State were proper and in approved form. State v. McCarver, 194 Mo. 717, 727; State v. Todd, 194 Mo. 377, 388; State v. Darling, 199 Mo. 168, 182; State v. Orrick, 106 Mo. 119; State v. Valle, 164 Mo. 551; State v. McGinnis, 158 Mo. 121; State v. Bobbitt, 215 Mo. 10, 39; State v. Howell, 117 Mo. 307, 320; State v. Taylor, 134 Mo. 109, 150. (7) A jury is not required to find that a person must have done the actual shooting which resulted in deceased's death before he can be convicted of murder. State v. Herman, 117 Mo. 637; State v. Orrick, 106 Mo. 119; State v. Gow, 235 Mo. 307, 323; State v. Reeves, 276 Mo. 339, 346.

WALKER, J.—Appellant and Willis Millard were jointly indicted by the grand jury of St. Louis County charged with murder in the first degree in having killed Eugene S. Conrey. A severance was granted the appellant, who upon a trial was convicted as charged and his punishment fixed at imprisonment in the penitentiary for life. From this judgment, he appeals.

The evidence for the prosecution was largely circumstantial. Appellant, Willis Millard, a co-indictee, and David Burke were in an automobile in the town of Clayton at about midnight, August 30, 1920. Eugene S. Conrey and Benjamin Corner, two deputy sheriffs, attempted to drive by the car in which the defendants and others were seated, when a command was issued for some persons to throw up their hands. This was followed by

a declaration in a loud tone of voice, "You've got the wrong man this time." A volley of shots followed, and the same voice said, "You are under arrest." Then there were three other shots, and a commanding voice said: "Get out of the car, every one of you." These facts were testified to by residents of the immediate neighborhood, who heard the shots and voices before they saw the automobiles. The first command given was in a different tone of voice to that which said "you've got the wrong man this time." The latter statement was followed in the same tone of voice by the declaration "you are under arrest, get out of that car, every one of you." In the interchange of shots Millard was wounded and fell, part of his body lying in the car and the remainder on the running board. Immediately after he fell, his companions, Burke and the appellant, complied with the command of the deputies and went to Conrey. He searched Burke, and told Corner, the other deputy, to take them up the hill. Corner started with the men in a westerly direction. A voice was heard saying, "Come on, there are two dead now." After they had gotten a short distance away, a witness who was in a near-by residence saw a man coming from towards the automobiles, skulking along some distance behind them and dodging from tree to tree. He was identified as Millard. After he passed in the direction taken by Corner and the two men under arrest, two shots were heard in that direction. Corner ordered the prisoners into a lawn, sank down by the side of a house and expired from a pistol wound in the back. While this was happening one of the citizens of the neighborhood went to the automobiles. He saw Conrey's body lying at the head of the officers' automobile, made an examination of it and found that he was dead from a pistol wound. As he rose from examining the body, Millard approached him with a drawn pistol and inquired what all this meant. He stepped backwards with his pistol drawn on the citizen, took the driver's seat in the automobile he and the others had occupied, and rode rapidly away. Other officers came and pursued

him. They ordered him to halt, but he jumped out of the car while it was in motion and disappeared in the shrubbery of Forest Park. The next morning he was found in University City suffering from a gun-shot wound. In the abandoned automobile was found a pistol.

Conrey was shot with a thirty-eight caliber bullet. Millard was shown to have been the only person at the scene of the crime who had that sort of a weapon. A number of shots were fired at officers Conrey and Corner. The Ford automobile in which the officers had ridden to the place where Conrey was shot had a number of bullets and bullet holes in it. From one of the bows at the top of the automobile a thirty-two caliber bullet was extracted, This bullet was shown to have been fired from a Colt's revolver. Appellant stated that he had in the automobile a thirty-two caliber Colt's revolver. Burke had no weapon.

A statement made by appellant was offered in evidence, in which he denied the shooting, but admitted that he had a pistol at the time. The material parts of this statement are to this effect; that he and Burke and Millard were out riding in St. Louis County the night of the shooting. Burke was driving the car, Millard sat by the side of Burke, and the appellant sat on the back seat. They had engine trouble and stopped. Another machine pulled up in front of them and a man said, "Hands up, we are police officers," and showed his star. Someone behind the appellant shot at the officer. Questioned as to how any one behind him, if he was the only one on the back seat, could fire the shot, he said he did not know, that there were so many shots fired he lost track of them. After the shooting Millard tried to get out of the car, but fell or was knocked out, his feet lying in the car and his body lying over the running board. One of the men ordered the appellant and Burke to keep up their hands and walk up the hill. As they walked up the hill, two shots were fired. The officer in charge of appellant and Burke ordered them into an adjacent lawn, and saying, "Well, I'm done for; you can go." They ran and went

a round-about way down Page Avenue. Appellant's gun, he says, was left in the car in a pocket; that he didn't fire a shot. The gun was a thirty-two caliber. He says he wanted the gun because they had made up their mind they would not let anybody take them for anything; that they were not going to be arrested; that they were going to shoot their way out if necessary.

Burke, who was not indicted, testified for the appellant that he was with the latter at the time of the shooting; that officers Conrey and Corner drove their Ford automobile along the side of the automobile in which he, appellant and Millard were seated; that he said, "Whoa," and one of the officers said, "Whoa;" that the officer held a gun in his hand and said, "Hell, throw them up, you S— o— b——s." Then there was a shot from Millard's pistol, which was answered by the officers with their pistols; that he did not see any gun or pistol on appellant, nor about the machine.

Appellant testified that he had no pistol or gun with him at the time of the killing.

After the shooting of Corner, Burke and the appellant fled and were arrested in the city of St. Louis the next day. Burke was held in jail for about a month, but was discharged after the indictment was found against Millard and the appellant. Statements made by them were introduced in evidence, to which appellant objected on the ground that they were induced by fear and that he was not conscious of having made them.

I. It is contended that the trial court erred in admitting testimony that appellant's co-indictee, Millard, shot Corner after Conrey had been killed. We held in State v. Millard, 242 S. W. (Mo.) 923, under the same state of facts as at bar, that this testimony was admissible. Where, as here, two crimes **Entire Transaction.** are committed under such circumstances as to constitute one continuous transaction in the accomplishment of a common design; and the facts are so interrelated that the crimes are concurrent, proof

of one cannot be made without a showing, of the facts tending to establish the other. In short, the entire otherwise relevant facts may be regarded as part of the *res gestae*. [State v. Sykes, 191 Mo. 62; State v. Katz, 266 Mo. 1. c. 503.] Without their admission, a connected and intelligible statement of the transaction could not well be made, nor a clear understanding had of the same. This exception to the admission of testimony of other offenses we discussed at length in the Millard Case, with citations to numerous rulings sustaining the conclusion there reached, which, by parity of reasoning, is equally applicable to the case at bar. We find no ruling in the cases cited by appellant to sustain his contention, and we overrule the same.

II. The testimony is conflicting as to the character, whether voluntary or involuntary, of the statements concerning the crime, made by the appellant to certain police officers. Under such circumstances it is proper, as was the course here pursued, to submit the testimony to the jury under appropriate instructions that it may determine to which part, if any, credence should be given. [State v. Wansong, 271 Mo. 1. c. 59; State v. Simenson, 263 Mo. 1. c. 267 and cases; State v. Powers, 255 Mo. 1. c. 269; State v. Creeley, 254 Mo. 1. c. 392 and cases.] The testimony in the instant case relating to the conditions under which the statements of the appellant were made, were entirely different from those in the Ellis Case, 290 Mo. 219, 242 S. W. 952, and the jury was authorized in finding that the testimony of appellant and the witness Burke in regard thereto was unworthy of belief. There is nothing in the record to authorize a disturbance of that finding.

*Confession.*

III. Error is assigned in the admission in evidence of what purported to be a thirty-two caliber pistol bullet shown to have been cut out of one of the bows constituting the frame work of the top of the Ford car in which the

Demonstrative
Evidence.
officers were riding. The objection to this testimony as tending to show an incriminatory circumstance is urged, not upon the ground of the inadmissibility of testimony of this character, but that there was no showing that the bullet found in the bow of the car was not there before the night of the difficulty, and that the car had not been properly guarded to prevent the firing of the bullet into the bow after the night of the difficulty. Neither of these grounds is supported by the facts. Mrs. Conrey, the widow of one of the officers killed and who owned the car, testified in effect that it had no bullet holes in it prior to the night of the difficulty. The then sheriff of St. Louis County took the car early on the morning of the killing of the officers and found it with several bullet holes therein and kept it under lock and key until the day of the trial. In view of these facts it is scarcely necessary to discuss the admissibility of testimony of this character except to set the matter at rest, as to its competency within the limits defined in many cases. Appellate courts, in the furtherance of justice, have sustained the admissibility of such testimony, holding that its admission was subject to the discretion of the trial judge; this, of course, with the limitation that such discretion be shown to have been exercised with a proper regard for the rights of the defendant. Such testimony is classified as demonstrative. Among other reasons urged in behalf of its admission is that it may prove explanatory of other facts in evidence or as inferences to be drawn therefrom. Any physical object therefore connected with the crime, or parties charged with same, which may tend to show the manner in which the act charged occurred and upon whom or by whom it was committed is held to form an essential part of the transaction, and may be admitted in evidence. [State v. Hopkins, 278 Mo. 388, 213 S. W. 126; State v. Looney, 204 S. W. (Mo.) 25; State v. Reeves, 195 S. W. (Mo.) 1. c 1031; State v. Gartrell, 171 Mo. 1. c. 507; State v. Goddard, 146 Mo. 1. c. 184; State v. Moxley, 102 Mo. 374.] Especial application has been given to the admis-

sion of such testimony where the articles, instruments or weapons indicative of the crime are found near the scene of the homicide subsequent to the commission of the same upon the theory that they may tend to explain the crime, although not otherwise connected with the accused. [Vaughan v. State, 130 Ala. 18; Burton v. State, 115 Ala. 1; Moses v. State, 36 Ala. 211; Henry v. People, 198 Ill. 162; Painter v. People, 147 Ill. 444; Davidson v. State, 135 Ind. 254; Dill v. State, 106 Ga. 683; Woolfolk v. State, 85 Ga. 69; Horn v. State, 73 Pac. (Wyo.) 705; State v. Hill, 65 N. J. L. 626.]

Appellant's contention in this behalf is therefore without merit.

IV. Complaint is made of the refusal of an instruction requested by appellant at the close of the State's case in the nature of a demurrer to the evidence. In support of this complaint it is urged that there was no proof of a conspiracy sufficient to overcome the presumption of appellant's innocence, and no evidence directly connecting him with the killing of officer Conrey. To this contention, as made, it is sufficient to say that it was waived when the appellant, after it was overruled, introduced testimony in his defense. [State v. Barker, 242 S. W. (Mo.) l. c. 409, and cases.] However, we find that a like instruction was asked at the close of the entire case. The effect of this instruction is to challenge the sufficiency of the entire evidence to sustain the verdict, and constitutes a defense demanding consideration whenever made, regardless of the filing of the demurrer.

*Demurrer: Conspiracy.*

This instruction is based on the assumption that no conspiracy was proved, and that the testimony was not otherwise sufficient to sustain the verdict. One of the grounds urged in support of the assumption is that acts and statements of the appellant were shown prior to the proof of a common design or conspiracy. If it be admitted that this contention is supported by the facts, this order of the admission of testimony was not error.

While the rule is general, it is not inflexible, that proof of a conspiracy must be first made before the acts or declarations of a conspirator can be admitted against the others. [State v. Thompson, 238 S. W. (Mo.) 786.] The flexibility of the rule has been demonstrated in our holdings to the effect that the order of the proof rests largely in the discretion of the trial court, and that the acts and declarations of one done or made in the absence of others may be admitted before proving the conspiracy. [State v. Reich, 239 S. W. (Mo.) 835; State v. Fields, 234 Mo. l. c. 623; State v. Flanders, 118 Mo. 227; State v. Walker, 98 Mo. 95.]                                          ?

The facts, however, do not show that any statements of the appellant were admitted in evidence prior to the showing of the concert of action by the appellant and his companions which resulted in the killing of Conrey. All of the physical facts, which speak more forcibly than oral testimony, leave no room for any other reasonable conclusion than that this killing was the result of a common design. Leaving out of consideration for the time being appellant's statement that it was their purpose if their arrest was attempted to "shoot their way out," let us examine the physical facts from which, independent of the statement, their conduct may be classified as individual or collective. If the first, leaving each actor to answer for his own conduct; if the second, requiring each to answer for that of any of the others. Let the facts therefore, the material facts, not words, marshaled as fairly for the appellant as truth will admit, manifest the nature of his relation to Millard in this transaction and thus define the limitations of his liability. They were riding over the highways of St. Louis County at midnight, armed. Their explanation of this, to say the least rather unusual performance, was that they were trying out a car. It may be conceded that the testing of an engine or the trying of a tire portends no fell purpose regardless of the number engaged therein or whether made at high noon or when the moon, like a silver horn, hangs low in the west and the silence of midnight en-

297 Mo.—27.

compasses the earth. But why armed? Fear of highway-
men may be urged as an answer. Let the facts which
culminated in Conrey's death determine the sufficiency of
this explanation. It was dark; but there was enough
light to enable them to determine the official character
of those by whom they were accosted, in that they saw
the officers' stars; and, in addition, were ordered to hold
up their hands accompanied by the declaration that "we
are officers." To this they responded with a fusillade
of pistol shots, although according to their contention
their purpose was peaceable and neither knew that the
other was armed or that he intended, upon being accosted
by an officer, to defy his authority even unto death. De-
fiance of the law or its representatives is characteristic
of the criminal. That the law-abiding citizen upon being
accosted by an officer would comply with the latter's or-
der, admits of no question. His conduct cannot, there-
fore, be drawn upon in analysing that of those to whom
the law is a fetter and its representative a menace.
Criminal annals teem with illustrations of the conduct of
those upon whom the law has laid its hand. Wherever
the apprehension or arrest of several afterwards shown
to have been criminals has been attempted, and there has
been a general resistance, the conclusion is almost in-
evitable that not only each of the accused knew of the
inclination and ability of the others to join in such resist-
ance, but that it would be made. The facts in the instant
case measure well with this conclusion. Neither the ap-
pellant nor Millard upon being accosted by the officers
would have offered violent resistance if he had not been
aware that the other was armed and that he would join
in the breach. If this be true, and its verity is attested
by all of human experience, then other evidence is un-
necessary to establish that concert of action or common
design which for a terseness of terms we call a con-
spiracy. Except as confirmatory of this conclusion what
other meaning can be attached to appellant's declaration
that they "were not going to be arrested; that they in-
tended to shoot their way out, if necessary." Construed

as declaratory of their purpose it is in harmony with all of the physical facts or circumstances concerning the killing. Otherwise interpreted, it is devoid of meaning. Aside from the declaration of the appellant, all of the facts necessary to show the conspiracy are circumstantial. Direct evidence, however, is not required to establish this status. Instigated by a purpose to do wrong, conspirators do not work in the open, but concoct their plans in secret. In proof of same, resort must be had to circumstantial evidence. [State v. Cummins, 279 Mo. 192; State v. Bersch, 276 Mo. 397; State v. Harrison, 263 Mo. 642; State v. Shout, 263 Mo. 360; State v. Fields, 234 Mo. 615; State v. Casto, 231 Mo. 398.]

The evidence being ample to establish the conspiracy, there was no error in the admission of the testimony complained of by appellant; and being substantial in its nature the court did not err in overruling the instruction at the close of the case in the nature of a demurrer to the evidence. This will suffice to determine the matter here under review.

V. Instruction five, given by the court, is complained of. An absence of testimony to sustain a conspiracy is urged in support of the error thus assigned. We have, in discussing the refusal of the general instruction as to the sufficiency of the entire testimony, ruled adversely to this contention. A conspiracy to violate the law having been shown, whether its fell purpose was to resist arrest, commit robbery or other felony is immaterial. If it culminated in murder then in a prosecution of that crime, evidence of the common design may be shown to determine the limit of the liability of the parties thereto. The appellant is not being prosecuted for participation in a conspiracy but the commission of a murder. The conspiracy is but an incident to the crime charged and evidence in regard thereto is admissible to show the conditions under which it was committed. This fact affords a reason for the rule that when, as here, a conspiracy is but an incident to

the crime, its existence may be shown although not pleaded. The case of State v. Carroll, 288 Mo. 407, 232 S. W. l. c. 702, is illustrative of the application of this rule in holding that: "Where defendants were charged with murder, conspiracy being an incident, failure of the information to allege the existence of a conspiracy neither furnished grounds for a motion to exclude evidence of such conspiracy, nor for refusing to give an instruction directing the jury's attention to it, as showing the condition, under which the crime was committed." The burden of the instruction complained of is in effect that although it may have been shown that Millard fired the fatal shot that killed Conrey, if appellant in furtherance of a common design was present, aiding, assisting, etc.. then the jury was authorized in finding the appellant guilty as charged although they may believe that he did not himself actually shoot or kill Conrey.

The instruction violates no precedent and declares no doctrine prejudicial to the appellant. The giving of same was therefore not error.

Instruction eleven, complained of, was simply the converse of instruction number five. Instruction eleven defined the rights of the appellant and the duty of the jury if they believed from his testimony that he was not attempting to commit a felony or to aid and assist in its commission. The law as thus declared was favorable to the appellant and he has, therefore, no ground of complaint on this score. Instruction D3, asked by the appellant and refused, did not, under the facts correctly declare the law. No error was therefore committed in its refusal.

The guilt of the appellant as charged, the court having shown that a conspiracy existed, did not depend upon proof that he fired the fatal shot. Other instructions asked and refused either did not correctly declare the law or were covered by instructions given.

VI. Error is assigned in the failure of the prosecuting attorney to examine all of the eyewitnesses to

the homicide.   This contention harks back, perhaps un-
wittingly, to the early common law un-
der which the accused could not, as a
matter of right, demand compulsory
process for his witnesses, and, hence, it became the duty
of the prosecution, in the interest of justice, to examine
all persons who had any knowledge of the material facts
connected with the crime.   Under our constitutions, State
and National, compulsory process for the attendance of
all of his witnesses is given to the accused.   The reason,
therefore, for requiring the State to produce and examine
all witnesses to a crime no longer exists;  and it is not
necessary for the State to examine all of those who have
a knowledge of the crime.   The requirements of the law
are met if the testimony adduced is of a sufficiently sub-
stantial nature to establish the commission of the crime
by the accused.   [State v. Ferguson, 278 Mo. l. c. 134,
and cases.]

*Examination of All Witnesses.*

The record disclosing no prejudicial error, the judg-
ment of the trial court is affirmed.   It is so ordered.   All
concur.