THE STATE v. PORTWOOD BELL, Appellant.

Division Two, December 20, 1926.

**1. FIRST DEGREE MURDER: Substantial Evidence: When Issue for Jury.** If the State produces substantial evidence tending to show defendant to be guilty of murder in the first degree, the court does not err in submitting the case on that issue; and in determining whether the State is entitled to instructions for first-degree murder (a) every reasonable inference which fair-minded men of reasonable intelligence might draw from the proven facts must be accorded to the State and (b) if the evidence tending to show murder in the first degree is substantial it is the duty of the court to submit that issue although the court may be of the opinion that its weight is to the contrary.

**2. INSTRUCTIONS: Murder: Common Design: No Evidence.** Where there is no substantial evidence tending to show a conspiracy between appellant and his co-indictee to take the life of deceased or to do him great bodily harm, the giving of instructions submitting the issue whether they formed a design and common purpose to murder deceased is error. And where deceased had gone to the house where defendant and the co-indictee were and asked for whiskey and being refused a fist fight ensued between deceased and the co-indictee, and up to that point there is no evidence at all of a previous arrangement or design between them to take the life of deceased or do him bodily harm, and the deceased then left the house and was followed by defendant, who chased him across the street and there struck him and left him lying unconscious on the sidewalk, the fact that after defendant had gone away the co-indictee came out of the house, crossed the street and beat deceased's head against the sidewalk and kicked him cannot be used to augment the punishment of defendant, unless the common purpose to do deceased some bodily harm had formed between them before defendant assaulted deceased.

Corpus Juris-Cyc. References: **Criminal Law**, 17 C. J., Section 3569, p. 223, n. 38. Homicide, 30 C. J., Section 311, p. 115, n. 25; Section 588, p. 333, n. 52; Section 591, p. 337, n. 87; Section 640, p. 395, n. 13.

Appeal from Saline Circuit Court.—*Hon. Robert M. Reynolds,* Judge.

REVERSED AND REMANDED.

*Lyons & Ristine, William H. Meschede* and *A. R. James* for appellant.

(1) The court erred in submitting the case to the jury for first degree murder as the evidence at most only constituted second degree murder. State v. Snow, 293 Mo. 150; State v. Kyles, 247 Mo. 640; State v. Minor, 193 Mo. 597; Ex parte Verden, 291 Mo. 565; State v. Young, 119 Mo. 495. (2) The court erred in submitting the case to the jury on the theory that the defendant and Eugene Mull formed a design or common purpose to murder the deceased as shown by instructions three and five, as there was no testimony to sustain such theory or justify said instructions. State v. Porter, 276 Mo. 387; State v. Stemmons, 262 S. W. 706.

*North T. Gentry,* Attorney-General, and *W. F. Frank,* Assistant Attorney-General, for respondent.

(1) No error was committed in instructing on first degree murder. The evidence justifies such a submission. State v. Ellis, 74 Mo. 207; State v. Parr, 296 Mo. 406. (2) The evidence justified the submission of the case on the theory that appellant and Eugene Mull formed a design or common purpose to murder deceased. "To constitute a conspiracy to do an unlawful act it is not indispensable that the evidence show the existence of the conspiracy for any definite period of time prior to the commission of the act, but the combination to do the act may have arisen on the spur of the moment." 1 Words & Phrases (2 Series) p. 913; State v. Parr, 296 Mo. 406. A conspiracy may be shown by facts and circumstances. It is for the court to say, in the first place, whether there is any evidence of a conspiracy, and for the jury to determine whether there was one, and its object. State v. Flanders, 118 Mo. 235; State v. Darling, 199 Mo. 199; State v. Fields, 234 Mo. 623; State v. Sykes, 191 Mo. 78; State v. Roberts, 201 Mo. 728.

RAILEY, C.—On May 11, 1925, the Prosecuting Attorney of Saline County, filed in the circuit court of said county a verified information, charging therein that on March 12, 1925, defendants Portwood Bell and Eugene Mull, with a pocket knife and certain other instrumentalities, feloniously killed C. W. Rex in Saline County, Missouri, and in so doing were guilty of murder in the first degree, etc.

On May 14, 1925, defendants waived arraignment and entered their respective pleas of not guilty. After several continuances an amendment of the information was made by consent by indorsing on back of same "Richard Cravens, Carl Mounts and George Stuband." Thereupon defendants again entered pleas of not guilty. On September 22, 1925, a severance was granted defendant, Portwood Bell. On September 25, 1925, after a trial before a jury, the latter returned a verdict finding defendant Bell guilty of murder in the first degree and assessed his punishment at imprisonment in the State Penitentiary for life. On the return of the verdict counsel for defendant informed the court that they desired to file a motion for a new trial within four days, and thereupon the cause was continued to September 30, 1925, at which time defendant filed a motion for a new trial, supported by affidavits. On October 8, 1925, the State filed counter affidavits. On December 16, 1925, the court overruled defendant's motion for a new trial. On said last-named date, allocution was granted, judgment rendered, defendant sentenced in conformity with the verdict and an appeal allowed defendant to this court.

The State's evidence was as follows:

Raymond Jones testified, in substance, that he lived on a farm about eight miles from Slater; that he was acquainted with deceased, C. W. Rex, in his lifetime; that he and Rex came to Marshall, Saline County, on March 12, 1925, in a Ford touring car; that about 5:30 P. M. on the above date, at the suggestion of Rex, they drove down to the Bert Simpson place in Marshall, located on Marion Street; that they stopped their car at the Simpson house; that Rex got out of the car with witness following, and they went to the door; that deceased went in and witness remained on the outside; that after deceased went into the house, he heard a racket in there and some one said, "There is the s—of-a-b—from Slater;" that this remark came from the inside and the door was closed; that witness went back and cranked up his car; that Rex came around from the side of the house with a scar on his face, and witness said to him, "What is the trouble?"; that Rex made no reply, and witness said to him, "Well, let's go;" that Rex started toward the car and defendant Portwood Bell started after him with a knife in his hand and with the blade down; that Rex was running with Bell after him and they had a scuffle behind the car; that Bell hit deceased on the side of his head with the butt of the knife, and deceased fell to the ground; that Rex was getting up on his arm, when Bell kicked him, and then started toward the car of witness; that at the time Rex came out of the house and towards the car he heard him say something, but the engine was running, and witness did not know exactly what was said, but he said something like, "I will get you," and Bell started towards him; that Rex was running and Bell right after him; that

when Rex made the remark, "I will get you," or some words to that effect, he was traveling towards the car; that deceased might have said, "I will shoot you sons-of-a-b——," but the engine was running and he did not hear it; that after Rex was down on the sidewalk, Bell said to him, "Get up, you ain't hurt," and kicked him with his foot; that Bell left deceased Rex and came over towards the car and witness drove away to Slater; that he did not see Mull come out of the house; that he heard Rex say when he came out of the house, "I will get you."

Joseph Coffey testified, in substance, that he lived in Marshall on March 12, 1925, and was acquainted with Portwood Bell and Eugene Mull; that on above date he was at the dwelling house of a negro named Bert Simpson; that Bell, Mull and two negro women were there when Rex came into the house; that Rex asked for Bert Simpson; that Mull and Cordelia Walker were there scuffling; that when Rex came in Mull hit him and knocked him down; that one of the negro women pulled Mull off of the deceased, and the latter went out of the back door; that he did not see deceased with arms of any kind.

Henry Maybery testified that on the above date he and Tom Ballowe were in front of the Bert Simpson house when Rex went in, and two or three minutes afterwards Rex came out of the house, with Bell behind him; that Rex said he would have Bell arrested; that the latter jumped off the porch and said he would teach him how to have somebody arrested; that Bell drew a knife from his pocket and opened it; that Rex ran around behind the car, across the street, and Bell right after him; that Bell hit deceased and the latter fell; that deceased, from the time he came out of the house until he fell, was running, looking back, and did not do anything; that when deceased fell, his head hit on the sidewalk; that Mull came out of the house, picked deceased up by the hair of his head, slapped him open-handed, and dropped his head back on the sidewalk; that Bell and Mull walked on down the street and left Rex lying there; that he and Ballowe took deceased to the doctor's office, and he was alive when they got to town with him; that deceased died on the same day; that when deceased came out of the house, and got ten or fifteen feet from the porch, he said to Bell, "I am going to have you arrested;" that Bell started after him, and had a knife; that he first saw the knife when Bell came off the porch; that they were scuffling as they came out of the yard; that Bell was hitting at deceased and the latter was running from him; that Bell hit deceased, the latter fell; that Bell kicked him and walked off.

Thomas Ballow corroborated the testimony of Maybery in most of the particulars. He further testified that when Rex came out of the house, he told Bell he was going to have him arrested; that Bell said, "You son-of-a-b——, I will learn you how to have somebody ar-

rested,'' opened his knife and started after Rex; that deceased ran behind the car, and in the scuffle got away from Bell; that they crossed the street, with Rex trying to get away; that Bell caught deceased and, in the scuffle, deceased got loose from Bell again; that the latter caught deceased, hit him on the chest; that Rex jumped up, fell over on the sidewalk, Bell kicked him four or five times, walked off and left him; that about that time Mull jumped off the porch, came over, picked deceased up by the hair of his head, slapped him open-handed, threw him back on the sidewalk and left him; that at this time deceased did not do anything, and was unconscious; that Bell had a knife in his hands when he hit deceased, and the blade of the knife pointed towards deceased's breast; that deceased never at any time struck at Bell.

Dr. A. T. Coffman testified that he examined Rex on above date; that he could feel no pulse at the wrist, opened his clothing, and saw blood on his shirt and underwear; that his face was badly bruised; that there was a cut in his abdomen just over the stomach, at the end of the breast bone, or probably an inch below the breast bone; that this was a vital part of the body; that on the next day he found a very decided bruise back of the left ear; that this bruised place was about one and one-half inches transversely, two or three inches up and down, was black and puffed out; that this bruise was on a vital part of the body; that violence caused his death; that in his opinion the wound about the head caused his death; that he found a cut in the abdomen that would be a contributing cause of his death; that the bruise on his head was sufficient to cause his death without breaking the skull.

Richard Cravens testified that he saw Bell hit Rex, and the latter fell to the sidewalk; that Bell walked away, and Mull came over, picked up deceased, and threw his head on the sidewalk; that Bell had left when Mull came over to where deceased was lying.

Gertrude Cravens corroborated the testimony of her husband, and said Rex was trying to get away and Bell hit him around the head some place; that deceased fell on the sidewalk and Bell went away.

Carl Mounts testified that he saw a knife like the one used by Bell, in the possession of Mull, but would not say it was the same knife.

R. L. Hyatt testified that he was presiding judge of the Saline County Court; that he saw Bell following deceased; that he stepped around on the east side of deceased and hit him in the back of the head, and Rex fell about the center of the sidewalk; that he saw Eugene Mull there; that Mull came out of the yard in a hurry, crossed the street to deceased, caught him by the hair of his head, raised him up part of the way in a sitting posture, threw him down on the sidewalk and kicked him in the side.

George Bullard testified that he was on his way home and saw Bell and Rex running across the street; that they stopped about ten feet from witness, when Bell grabbed Rex by the shoulder, pulled him around, pulled a knife from his pocket, hit deceased and the latter fell on the sidewalk; that Bell hit him with the knife; that Mull came over, grabbed Rex by the hair, stooped over and beat his head on the pavement; that Mull then left and went up town; that the only blow he saw was the one in which Bell hit deceased on his breast with the knife.

Ed Schrader testified that he saw the difficulty between Bell and Rex; that when he saw them Rex wanted to get to his car and Bell said, "You are not going to get to that car to get no gun," and Bell got between deceased and the car; that deceased backed off until he got across the street; that Bell hit him with his fist and knocked him down; that in falling Rex's head hit the edge of the sidewalk; that he (witness) was about thirty-five yards from them; that Mull came out of the Simpson yard and tried to get deceased up, and said to him, "You are not hurt;" that he raised Rex up twice, but the fellow was so weak that he could not stand up and fell down.

Dr. Spotts, Coroner of Saline County, held a post-mortem examination of Rex's body the next day after his death, and found a stab wound just below the sternum and, on opening it, found that some instrument had penetrated the liver about seven inches; that this was the only injury he saw to the internal organs; that he found severe bruises back of the ear and a few minor bruises on his face; that the wound back of the left ear seemed to be a very serious bruise; that it was red and swollen very much, and was black the next morning; that he found no fracture of the skull; that the stab in the liver was in a vital part of the body; that the one back of the ear was in a vital part of the body; that in his opinion the lick on the back of Rex's head caused his death; that the other wound was a contributing cause of his death.

Garrett Hutcherson, Sheriff of Saline County, identified the knife found in possession of defendant, which had fresh blood on it when he arrested defendant on the evening of March 12, 1925.

The evidence for defendant was as follows:

Defendant, Portwood Bell, testified in his own behalf that he was thirty years old, had a wife and three children, whose ages are three, five and eight respectively; that he had lived in Marshall, Missouri, all his life; that he had only seen the deceased once before in his life; that when Rex came in the Simpson house, he asked if Bert Simpson was there. Cordelia Walker told him, "No," and he then asked her if there was any liquor there and she answered in the negative; that he then said, "Any of you sons-of-a-b—got any liquor?" and Mull said, "You Slater son-of-a-b—," and the fight started; that

he (witness) and Cordelia separated them; that the fight was in the west room; and he pulled Mull off of Rex; that Mull then sat on the bed and defendant picked up Rex's knife, a pair of glasses and a book; that Rex got up out of the corner and went to the kitchen; that when Rex came out with a knife defendant hallooed, "Look out for a knife," and Mull knocked the knife out of Rex's hand; that Rex's knife came from the inside of his coat pocket; that when Rex went to the kitchen defendant called him back and said to him, "Buddy, everything is all right," and he came back, and defendant said to him, "Here is your glasses;" that defendant gave him the glasses and book, opened the door, Rex stepped out and defendant stepped out right behind him; that defendant put the knife in his pocket, and was going to give it to Rex as soon as he got outside, as he did not want any more fighting in the house; that when they got outside Rex looked back and said, "I am going to get a gun and shoot you son-of-a-b—" and witness said to him, "No, you are not;" that he started for Rex and opened up the knife; that he caught Rex on the south side of the car and hit him with his left hand; that Rex was trying to get to the car, and said, "I will get a gun and shoot you sons-of-b—;" that Rex went around the east side of the car and tried to get to the car on the north side; that he crowded Rex so fast that he went across the street; that he and Rex fought all the way across the street and on the sidewalk into the yard of Smith; that Rex got away from him and started back to the car; that he caught Rex on the sidewalk as he was headed for the car, and that is when he hit deceased in the breast; that Rex fell, and defendant saw he could not get up, and went on up in town; that he hit Rex with the knife because he started back to the car to get the gun; that he gave himself up to the marshal; that he went to Simpson's place about three or four o'clock; that he saw Rex two nights before the killing in the Bert Simpson house; that he never saw him at any other time before; that after Mull was jerked off of Rex in the house, the latter got up and started to run out; that Rex was not sore at him (defendant) and he thought the whole thing was settled; that he stepped right out to give him his knife; that he (defendant) did not stop on the porch and open the knife; that Rex did not say he was going to have defendant arrested; that he (defendant) did not say he would show him how to have somebody arrested; that he struck Rex with his left hand and Rex hit him in the face; that he had his knife in his hand when he followed Rex; that the latter was fighting him all the time; that he never saw this knife before; that he stabbed Rex because he was headed toward his car; that the (defendant) was convicted in 1922 in the circuit court for gambling.

Eugene Mull testified that he had lived in Marshall all his life, and was acquainted with Portwood Bell; that he and defendant were

at Bert Simpson's house, at the time Rex was killed on March 12, 1925. Mull corroborated defendant as to what occurred in the Simpson house from the time Rex came up there to the period when Rex and defendant went outside of the house. Mull further testified that deceased went out of the front door and defendant followed him; that the knife in controversy did not belong to him, and he never saw it at any other time, except while in possession of deceased; that when the fight started in the house Rex struck the first blow; that when Rex left the house defendant went out after him, and Mary Wilson and Cordelia stepped up in the door and he was behind them in the doorway; that Rex turned to Portwood Bell and said, "I am going to get a gun and shoot you son-of-b—;" that he (Mull) started to push past, but Mary and Cordelia shoved him back, and said, "There has been enough trouble, you stay in here;" that he (Mull) went back and laid down on the bed; that he did not see what defendant or Rex did after they went out of the house, and did not know what happened on the outside at that time; that he later went outside and over to where Rex was. (Witness declined to state what he did after going over to where Rex was). Mull further testified that he hit deceased in the house because Rex said, "You sons-of-a-b—, give me a drink;" that he was convicted in 1924 for assaulting one Black with a knife.

William Walden testified that he lived in Slater and was acquainted with deceased; that he saw Rex in possession of a knife about six months before the killing, and that in his opinion it was the same knife offered in evidence, or it looked very much like it.

Defendant offered a number of witnesses who testified that his reputation was good, and that Mull's reputation was good. The State, in turn, offered a number of witnesses, who testified that the reputation of both defendant and Mull were bad.

The instructions, rulings of the court and such other matters as may be deemed important, will be considered in the opinion.

I. The information herein is not attacked, and is sufficient as to both form and substance. [Sec. 3230, R. S. 1919; State v. Bacey, 267 S. W. 809, and cases cited.]

**Information.**

II. The trial court is charged with error in submitting the case to the jury on first degree murder. It is claimed that the evidence at most only constituted second degree murder. As this contention was presented at the oral argument of the case here, we have deemed it necessary to set out the main facts in the case fully. After reading the record and briefs of counsel, we have reached the conclusion that there is but little difference between them in respect to the main facts disclosed by

**First Degree Murder.**

the record. In determining whether the case was entitled to go to the jury on first degree murder, we must accord to the State every reasonable inference which fair minded men of average intelligence might draw from the proven facts in the case. Considered from this view-point, if the State produced at the trial substantial evidence tending to show that defendant was guilty of first-degree murder in taking the life of C. W. Rex on March 12, 1925, then the court was within the law in submitting this issue to the jury.

In passing upon this question we have no legal right to decide it upon the weight of the evidence. That is to say, if the State produced substantial evidence tending to show that defendant was guilty of murder in the first degree, it was the duty of the court to submit this issue to the jury, notwithstanding the trial court might be of the opinion that the weight of the evidence was the other way. We are of the opinion that the testimony of Raymond Jones, Henry Maybery, Thomas Ballowe and that of other witnesses heretofore set out was sufficient in law to warrant the court in submitting the case to the jury by instructions for murder in the first degree. [State v. Crump, 267 S. W. 827; State v. Parr, 296 Mo. 406; State v. Snow, 293 Mo. 143.]

III. The court is charged with error in giving instructions three and five in behalf of the State, which submitted to the jury the issue as to whether appellant and Eugene Mull formed a design or common purpose to murder deceased. The evidence relating to everything that was said and done at the Simpson house
**Conspiracy.** is set out with great particularity heretofore. The evidence is undisputed that defendant and Mull were at the Simpson house on March 12, 1925, and that deceased came to this place while they were there. It is undisputed, that deceased called defendant and Mull sons-of-b— and wanted to know if they had any whiskey. Thereupon Mull assaulted Rex or the latter assaulted Mull, and a fist fight ensued between Rex and Mull. They were separated by defendant and others, and inflicted no injury on each other. Thereupon Rex went out doors, followed by defendant. Mull remained in the house, laid down on the bed, saw no part of the assault made by defendant on Rex, and knew nothing about what had occurred until after defendant had struck deceased on the head with the knife and stabbed him. Up to this point, there is not even a scintilla of evidence tending to show any previous arrangement or design between defendant and Mull to take the life of deceased or to do him bodily harm. As between defendant and deceased, the crime, if any, was fully completed and the death wounds inflicted on Rex before Mull appeared on the scene. It may be true that Mull was guilty of a criminal assault on deceased in his helpless condition, but

316 Mo.—13.

his criminal act in this respect should not have been used to augment the punishment meted out to defendant for his (appellant's) alleged previous crime.

In the well-considered case of State v. May, 142 Mo. 151, Judge SHERWOOD, in considering this subject, said: "Where a person joins a conspiracy already existent, he thereby ratifies any acts done or threats previously made by the conspirators in furtherance of the common design; but in order to fasten the guilt of such antecedent acts or threats on such newly-joined conspirator, it is a *sine qua non* to establish that the conspiracy was afoot when the acts were done or the threats made." [See, also, State v. Porter, 276 Mo. 394; State v. Thompson, 293 Mo. 116, 238 S. W. 786; State v. Parr, 296 Mo. 417, 246 S. W. 906; State v. Recke, 278 S. W. 999.]

In State v. Porter, 276 Mo. 395-6, Judge WALKER, in considering instructions similar to those numbered three and five complained of in this case, said: "A summary of the facts in the instant case as we have stated them in detail, shows that appellant, angered by the remark made to the woman by Carpenter, struck the latter with his fist. They exchanged several blows. Carpenter then struck or struck at Mills, who had thus far not participated in the difficulty, and the latter, as he states, struck back with a knife in his hand. Carpenter fell, and his death was the result of a stab in the neck which severed his jugular vein. Neither before, during or after the difficulty is there in evidence any fact or circumstance indicative of a common purpose on the part of appellant and Mills to commit the crime with which the former is charged. The giving of the instructions, therefore, was prejudicial error. Aside from our own rulings, of which those cited are but types of others, the following cases from courts of last resort elsewhere announce a like doctrine." [Here followed an array of authorities from other states.]

In view of the facts heretofore stated, and our rulings with reference thereto, we find that there is no substantial evidence tending to show a conspiracy between defendant and Mull to take the life of Rex or inflict upon him great bodily punishment. Following our ruling in the Porter case, supra, we hold that the giving of said instructions numbered three and five was prejudicial error.

IV. Other matters are discussed in the briefs of counsel, which are not likely to appear in the re-trial of the case and, hence, we do not deem it necessary to pass on same.

On account of the error heretofore mentioned in the giving of said Instructions Three and Five, the cause is reversed and remanded, *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.