**STATE of Missouri, Respondent,**

v.

**Melvin POWELL, Appellant.**

**No. KCD 28182.**

Missouri Court of Appeals,
Kansas City District.

Oct. 12, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Sixteenth Judicial Circuit, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

PRITCHARD, Chief Judge.

By the verdict of a jury appellant was found guilty of robbery in the first degree and his punishment was fixed by it at 58 years imprisonment. Appellant filed a motion for reduction of punishment which was sustained by the trial court and he was sentenced to 40 years imprisonment in the Department of Corrections.

The indictment of the Grand Jury charged appellant with the robbery of Greg Melenson of $932.00 in his care and custody, which was the money of A & P Grocery Store, a corporation, which store, as the evidence shows, was located at 99th and Holmes Streets, in Kansas City, Missouri. The robbery of the A & P store occurred about 8:15 p.m., on March 13, 1975, and appellant's sole contention here is that the trial court erred in overruling his pre-trial motion not to permit testimony of another robbery occurring about the same time of the Bisceglia Drugs store which was near to the A & P store. That evidence was received at trial, and appellant's point is that it had no probative value, and was evidence of another crime and was unduly prejudicial, within the prohibition of cases such as *State v. Ingram*, 286 S.W.2d 733 (Mo.1956); *State v. Holmes*, 389 S.W.2d 30 (Mo.1965); and *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (1954), all cited by him. Under the facts as detailed below, this case comes within two exceptions to the exclusionary rule of the cases cited: (1) To identify appellant as a participant in the robbery with which he was charged; and (2) to show a common plan embracing the commission of the two robberies. (There were four men involved in the two robberies.)

The occurrences of March 13, 1975, began when Thomas J. Howard, assistant manager of A & P, received information from the police that the store might be held up. About 2:00 p.m., he saw a man fitting the description of a possible robber get into a black over beige Cadillac with three other men. As the car drove away he wrote down the license number and called the police and gave them that information. About the same time, Mary Waldrop, an employee of A & P, saw two black men enter the store separately, make small purchases and leave. She identified the two in a lineup after the robbery.

Sharon Stevens was a checker in the A & P store at the time of the robbery. Two black men entered the store and one of them ordered Sharon to get the money out of the cash register, which she did, and dumped the money into an A & P grocery sack, which she testified was like State's Exhibit 4. Sharon could not positively identify either man in a lineup, but did identify one man's clothing, and she was able to identify one man from a photograph of the lineup.

Gregory Melenson was a clerk for A & P. He saw two men enter the store, one of whom was wearing a blue stocking cap and the green plaid suit, which Melenson identified as State's Exhibit 3. Melenson was told to hit the floor which he did, remaining there throughout the robbery, during which he heard the man in the front of the store tell the one in back, "Come on, man. We have been here too long. Let's go." Melenson later identified Larry Washington in a lineup.

Peggy Poland was a customer in the A & P when the robbery took place. Someone came up behind her with a gun and told her to "hit the floor." While on the floor she heard the person with the gun speak to someone else, calling him "Mel." After the robbery, Peggy's billfold was missing from her purse.

Roger L. Jacobs, a customer of A & P, walked into the store while the robbery was in progress and was told to lie on the floor by a black man. He heard the man calling

to another man referring to him as "Mel." Later at Police Headquarters, he identified the man as Larry Washington.

Gayland Rindt was in charge of A & P the night of the robbery, prior to which he walked outside and noticed a brown Cadillac with a dark top and motor running backed into a parking place. When Rindt went back into the store he saw two men and was instructed to hit the floor by one of them. He was then ordered to get in the office and get the money, which he did and gave it to the other man. Both men were black and armed with guns. One was wearing a green suit with white flecks, identified as like State's Exhibit 3, and a ski mask. After the men were gone Rindt noticed the Cadillac which he had seen was gone. From a photograph shown at trial, he identified Larry Washington as one of the robbers.

Francis P. Bisceglia owned the pharmacy at 99th and Holmes next to the A & P store. About 8:15 p.m., on March 13, two armed black men entered his store. Both wore stocking caps and one wore sunglasses. A robbery took place with narcotics, money and postage stamps being taken and placed in a white pillow case. Bisceglia identified State's Exhibit 6 (drugs) as coming from his store, and testified that State's Exhibit 8 was like the pillow case used in the robbery.

Putting together all of the foregoing bits of evidence is the testimony of Richard Snyderhoud, an officer of the Kansas City Police Department. With Officer Paul Bass, he was in a patrol car at 47th and Prospect when, at about 8:20 p.m., he received a holdup call from 99th and Holmes. At about 77th and Paseo they saw a black over light colored Cadillac proceeding north. This fit the description of a car (and license number) described to them earlier that day. The car was stopped at 75th and Highland, at which time all the officer could see was the driver, but another person sat up in the passenger side of the car. The driver fit the description of one of the suspects involved in the robbery. Referring to the lineup photograph, Snyderhoud identified

the driver, Larry Washington, to be first from the left; the passenger, Carl Rule, was third from the left. These two men were arrested, taken to Police Headquarters, before which a search was made of the car except for the trunk for which the driver said he had no key. The car was then taken to the police tow lot at 1st and Lydia, and a search warrant was then obtained for a search of the trunk. At about 1:00 a.m., the trunk of the car was opened and appellant with one O'Neal, a black man, were found in it. There was also found a quantity of money, drugs, four handguns, a green plaid leisure suit, some stocking caps and ski masks. Appellant was reaching for the paper sack which contained the handguns as the trunk was opened. State's exhibit 3 is the green plaid suit.

The following exhibits were received in evidence: State's Exhibit 1, a billfold; State's Exhibit 3, a leisure suit; State's Exhibit 4, a sack; State's Exhibit 6, a sack of drugs; State's Exhibit 7, a folder of stamps; and State's Exhibit 8, a pillow case. As noted above, State's Exhibit 3 was identified as the plaid suit worn by one of the robbers; State's Exhibit 4 was like the sack in which loot was placed; State's Exhibit 6 was identified as drugs taken from the pharmacy; and State's Exhibit 8 was like the pillow case in which the pharmacy loot was placed.

As noted in the recitation of facts, no witness was able to identify appellant as one of the robbers who actually held up the A & P store. The other robber was identified as Larry Washington, and he was the one found by Officer Snyderhoud in the driver's seat of the Cadillac at the time it was stopped at 75th and Highland. Some four hours later appellant was found and arrested with O'Neal in the trunk of the Cadillac where much of the loot taken in the robberies was also found. The recent unexplained possession of the loot jointly with O'Neal connects appellant with the crime, and establishes his identity as one of the perpetrators thereof, as the jury could and did find. *State v. Gerberding*, 272

S.W.2d 230, 232[1] (Mo.1954), where articles used in the robbery were identified, as here. Four men were in the Cadillac when it was seen by witness Howard about 2½ hours prior to the robbery, and this Cadillac was by its license number proved to be the same one in which appellant and O'Neal were found in the trunk and in which Washington was the driver. During the robbery of the A & P store, Washington was heard to call to appellant by his first name, "Mel". Obviously, the concealment of the two men in the trunk was a ploy to throw off pursuit and arrest, as the jury could find. *State v. Cochran,* 366 S.W.2d 360, 362[3, 4] (Mo. 1963), where evidence of defendant's conduct in being found in a clothes closet when officers entered an apartment to find him, was held admissible.

The whole of the conduct of these four men certainly tends to show that they had a common design or scheme to commit the simultaneous robberies, and then escape with the loot and to avoid detection and arrest. The rule of admissibility of a separate crime under the facts present in this case is stated in *State v. Ward,* 457 S.W.2d 701, 708[11] (Mo.1970), "It is held in this state that where two or more persons engage in a commission of a crime or crimes, proof of all relevant facts is generally proper. *State v. Adams* (Mo.Sup.) 380 S.W.2d 362, 368. In *State v. Parr,* 296 Mo. 406, 246 S.W. 903, at 905, where two different persons had been charged, the court said: ' * * * Where, as here, two crimes are committed under such circumstances as to constitute one continuous transaction in the accomplishment of a common design, and the facts are so interrelated that the crimes are concurrent, proof of one cannot be made without a showing of the facts tending to establish the other. In short, the entire otherwise relevant facts may be regarded as part of the res gestae. (Citing cases.) Without their admission, a connected and intelligible statement of the transaction could not well be made nor a clear understanding had of the same. * * * *'.'" Under the facts, and in accordance with the law as set forth in the foregoing cases, the trial court did not err in failing to exclude evidence of the concurrently executed robbery of Bisceglia Drugs store, as it comes within the recognized exceptions to inadmissibility of other crimes: Proof of identity of the accused, and being evidence of a common scheme or design.

The judgment is affirmed.

All concur.