STATE of Missouri, Respondent,

v.

Ollie THOMPSON, Appellant.

No. 55835.

Supreme Court of Missouri,
Division No. 1.

April 12, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

George L. Fitzsimmons, Clayton, for appellant.

HOUSER, Commissioner.

Ollie Thompson, convicted by a jury and sentenced by the court to 75 years' imprisonment on a charge of forcible rape, § 559.260, V.A.M.S., has appealed.

Defendant first asserts that the court erred "in admitting the defendant's confession into evidence since it was made in the highly coercive atmosphere of the police station after a lengthy interrogation held without advising the defendant of his constitutional rights."

An examination of this record reveals no evidentiary basis for defendant's assertion; nothing to indicate "coercive atmosphere"; nothing to indicate that there was a lengthy interrogation; nothing to indicate that defendant was not advised of his constitutional rights.

The State's evidence on these issues was given by three police officers, as follows: Defendant was arrested on the rape charge while being held in custody at the holdover at the police station, where he had been confined on another charge. He was brought up to the burglary-robbery division on the fourth floor. Three officers and the defendant were present. One of the officers informed defendant that he was being charged with rape and robbery; that he had a right to remain silent; that anything he said would be used against him in a court of law; that he had a right to have an attorney or counsel; that if he was indigent and could not afford an attorney the State would furnish an attorney for him, and that he had a right to have counsel during the interrogation about to be made, if he so desired. After being advised of his rights defendant said that he understood his rights. He did not request an attorney; did not ask to make a telephone call, and did not ask whether his parents could come down to the station and talk to him before he made any statement. No threats or promises were made. Defendant was not told that the officers would go easy on him if he made a statement. After his rights were explained to him and he stated that

he understood his rights and before the officers began to question him, defendant made the statement that he knew what the officers had brought him up for; knew what he did; that he wasn't "going" (to the penitentiary?) by himself; that he was going to tell the story "so the rest would get what they had coming to them also"; that "he wasn't going to take the rap all by himself." (His recital implicated three other men.) He then made an oral statement giving the details and circumstances surrounding the rape and his participation and that of the other three men. It was a voluntary statement. The statement was made "almost immediately"—within "five minutes or so" after he was advised of his rights.

Defendant took the stand and testified in his own behalf. He gave no testimony indicating that the atmosphere during the discussion with the officers was "highly coercive" or coercive at all. He testified that the officers did not hit or beat him; that he was in the room about 30 minutes; that he was advised of his constitutional rights, namely, that he had a right to remain silent; that he had a right to have counsel, a lawyer, and to have a lawyer there while he was being questioned, and that anything he said would be used against him in court. He conceded that he did not ask for a lawyer to be present to represent him during the interrogation. He testified that he asked for an opportunity to make a telephone call to his aunt and that he was permitted to do so; that the officers accused him of raping a white girl; that he denied any knowledge of the affair; that he was questioned 15 or 20 minutes; that he did not tell the officers that he was involved, and that if the officers said he made a statement that he had raped the girl they were lying.

■ All of the testimony, including that of defendant himself, negatives the first assignment of error. In his brief defendant concedes that "the Miranda warnings were given to the defendant." In the argument portion of his brief defendant contends that

the court erred in finding that defendant knowingly and intelligently waived his rights; that the "bare record" does not reflect that fact. On the contrary, the record supports the conclusion that defendant voluntarily, knowingly and intelligently waived his constitutional rights, which concededly were fully explained to him in advance of his making any statement, and that likewise the answers he gave to the questions asked were voluntarily, knowingly and intelligently given. A finding that defendant's statements were involuntary, or that he did not know and appreciate what he was doing or was not apprised of his rights would fly in the face of this record, including the testimony of defendant himself.

■ Although not presented to us as a point of error defendant makes the further contention in the argument portion of his brief that at the voir dire hearing on the question of voluntariness the court "should have made a clear finding, whether formal or informal, that the statements and admissions were voluntarily made and the reasons for this finding," citing Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908, and State v. Glenn, Mo.Sup., 429 S.W.2d 225. The court's finding was as follows: "The Court finds the statement made in question was voluntarily made by the defendant, and was not secured by coercion, threats or through fear and was not induced by promises of immunity. The Court further finds the statement in question is competent evidence and therefore overrules the defendant's objection and will so admit the statement into evidence." This finding is sufficient under Jackson v. Denno and State v. Glenn, supra, and State v. Cluck, Mo.Sup., 451 S.W.2d 103. It comports with Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598, in which it was indicated that although the judge need not make formal findings of fact or write an opinion, "his conclusion that the confession is voluntary must appear from the record with unmistakable clarity."

■ Defendant suggests that the record is silent on the question of waiver of defendant's right to counsel. While defendant did not in terms expressly state "I hereby voluntarily, knowingly and intelligently waive my right to have a lawyer present while I answer the questions of these officers," it is not necessary that the accused expressly decline assistance of counsel in order that statements voluntarily made by him be used against him at the trial. Bond v. United States, 10 Cir., 397 F.2d 162. In that case the court said, "We do not read Miranda to hold that 'an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow.'" 397 F.2d 1. c. 165 [3]. The fact that an accused declined counsel voluntarily and understandingly may be established by surrounding circumstances unequivocally showing a waiver. United States v. Montos, 5 Cir., 421 F.2d 215; Keegan v. United States, 9 Cir., 385 F.2d 260, 264 [7]; Bond v. United States, supra; Lewis v. State of Oklahoma, W.D.Okl., 304 F.Supp. 116, 122.

■ While a waiver of the right to the assistance of counsel may not be presumed from the silence of the accused, the following facts and circumstances unequivocally indicate that defendant made a knowing waiver of that right: Defendant said he understood his rights, which included the explained right to counsel. There is nothing to show that he was lacking in understanding. He did not request counsel. He asked for and obtained permission to call his aunt. While we do not know what transpired in that conversation it is a permissible inference that defendant's talk with his aunt satisfied any desire he may have had to counsel with outside people who had his interests at heart. The interrogation by the officers was brief—only five minutes in duration, after explanation of his rights, if the officers are to be believed; only 15–20 minutes if we take the testimony of defendant on this question. Defendant demonstrated a ready willingness to talk about the case, implied his

guilt, impliedly conceded that he knew he was going to be punished, and expressly stated his desire to implicate the other participants so that he would not be the only one punished. In the totality of the circumstances an intelligent and understanding rejection of the offer of counsel is made manifest. There was no error in finding that the confession was voluntarily given after knowing and intelligent waiver of constitutional rights, and no error in admitting the confession in evidence. State v. Hughes, Mo.Sup., 460 S.W.2d 600 [1]; State v. Pughe, Mo.Sup., 403 S.W.2d 635.

■ Next, defendant claims that the court erred "in initially instructing the jury that the Court would assess the punishment if the jury could agree on guilt but could not agree on punishment." Defendant concedes that the previous cases holding it reversible error to so instruct the jury in advance have been overruled by the recent en banc decision of this Court in State v. Brown, Mo.Sup., 443 S.W.2d 805. Defendant gives no reason why we should reconsider the decision in State v. Brown and return to the former rule, other than the suggestion that the decision in State v. Brown invites the jury to disregard their duty to fix punishment as well as determine defendant's guilt. This *ratio decidendi* of the decisions abiding by the former rule, State v. Stuver, Mo.Sup., 360 S.W.2d 89, and State v. Gilbreath, 130 Mo. 500, 32 S.W. 1023, was fully analyzed and definitely repudiated in State v. Brown. And see State v. Mills, Mo.Sup., 465 S.W.2d 554 (decided April 12, 1971). We decline to review the question so lately and authoritatively determined adversely to defendant's contention.

■ Finally, defendant maintains that the court erred "in refusing to grant a mistrial when, during the cross-examination of one of the police officers about the confession, the Court made an improper comment on the tactics of defense counsel." Officer Oscar Farmer testified on direct examina-

tion that defendant had made a statement in his presence admitting his participation in the rape. Defendant's counsel, on cross-examination, sought to develop whether the statement was in writing or was recorded; whether it was taken down by a secretary, tape recorder, or wire recorder, and whether the officer wrote down every word defendant said. Then defense counsel asked "Did he write it out by hand?" and the witness answered, "No, sir." At that point the court interrupted and asked, "Why don't you ask him how it happened so we can proceed, Counselor? Ask him how it was recorded." Defendant's counsel approached the bench and out of the hearing of the jury took exception to the remarks of the court on the ground that the court was drawing an inference that the defense attorney was "attempting to mislead or hide something from the jury" and requested a mistrial. The court responded by warning defense counsel not to delay the trial. We find no reversible error in the action of the court. At worst it demonstrated impatience, but the question and direction by the court are not fairly susceptible to the construction placed upon them by defense counsel. The jury could not reasonably have concluded that the court was drawing an inference that counsel was attempting to mislead the jury or to conceal something from them. While the court would have been better advised not to thus interrupt defense counsel we find no basis to conclude that defendant's rights were thereby prejudiced. As in State v. Barnholtz, Mo.Sup., 287 S.W.2d 808, 812, we believe that the object and purpose of the trial judge was to expedite the trial of the case without in any way adversely affecting the defendant's rights under the law, and that defendant's rights were not adversely affected.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Special Judge, concur.

HOLMAN, J., not sitting.