STATE of Missouri, Plaintiff-Respondent,

v.

Henry Earl HENDERSON, Defendant-Appellant.

No. 35381.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 23, 1974.

Motion for Rehearing or Transfer to Supreme Court Denied June 12, 1974.

Application to Transfer Denied
July 22, 1974.

Donald L. Schmidt, Christopher T. Hexter, Legal Aid Society, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Ellen S. Roper, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., J. Paul Allred, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant Henry Earl Henderson appeals from convictions for second degree murder and assault with intent to kill without malice. In accordance with the jury assessment, defendant was sentenced to twenty and five year terms of imprisonment, respectively, for the murder and assault convictions; said terms to run concurrently.

Defendant raises five points on appeal, but does not question the sufficiency of the evidence which was entirely circumstantial. His first three points question the admissibility of certain evidence. The fourth point questions one of the court's instructions to the jury, and the fifth point questions certain portions of the circuit attorney's closing argument to the jury. We affirm.

While making insurance collections on June 24, 1972 from the residents of an apartment building located at 2431 Dickson in the City of St. Louis, Early Lashley and his private security guard, Jolly Doyle, were confronted by two armed men. One of the men was armed with a shotgun, the other with a pistol. Both men had their faces covered with what Doyle later described as light blue scarves which appeared to be made of a thin silky material. Once confronted, one of the men told Doyle and Lashley not to move. About the time a pistol was fired, Doyle rushed the man with the shotgun. While Doyle rushed the man with the shotgun, he reached for his own gun but was interrupted when pellets fired from the shotgun struck him in the face. Immediately after Doyle was struck, the two men disappeared. Doyle then turned to assist Lashley who was lying on the floor and groaning. Doyle then knocked on the door of one of the apartments and asked an occupant to call the police.

Within about five minutes, St. Louis Metropolitan Police Officers arrived at the apartment building. Doyle and Lashley were escorted to City Hospital No. 1, where Lashley was pronounced dead on arrival. The physician who performed the autopsy determined the cause of Lashley's death to be a gunshot wound of the brain. The physician removed the bullet from

Lashley's brain tissue and gave it to an officer from the police laboratory.

Around 10:30 a. m. additional police officers arrived at the scene and began questioning residents of the apartment building. While engaged in this questioning, the officers saw a man walking down the stairs of the apartment building. The man identified himself as Henry Henderson. In response to a question, Henderson told the officers that he had been in his apartment with his mother all morning. Three officers accompanied Henderson back to his apartment to check his alibi. His mother was not in the apartment when the officers arrived. Henderson then consented to a search of his room which revealed nothing of value to the officers. The officers, after arresting Henderson, discovered a .38 caliber revolver under a mattress in another room and took possession of the gun. It was later determined that the revolver found under the mattress fired the bullet that killed Early Lashley. Noticing that the bedroom window was open, two of the officers looked out the window and saw a blue scarf on the ground. After photographing the scarf, the officers took possession of it. This scarf was later shown to Doyle. Although he could not identify it as one of the scarves worn by his assailants, he did identify it as being similar in color and texture to the scarves worn by the assailants.

Prior to the trial, defendant filed a motion to suppress evidence. After a hearing on this motion was held, the trial court overruled the motion.

At the trial, the only surviving witness who testified, Jolly Doyle, was unable to identify Henderson as one of the assailants. The .38 caliber revolver and photographs of the location where it was found were admitted into evidence. Testimony concerning photographs of and an evidence receipt for the blue scarf found outside defendant's apartment were also admitted into evidence. Defendant Henderson testified in his own behalf.

Defendant first contends that the trial court erred in denying his oral motion to suppress certain evidence, namely the .38 caliber revolver, obtained by police officers as a result of an allegedly unlawful search and seizure. He claims that the warrantless search was unlawful because it was not incident to a lawful arrest based upon probable cause. Irrespective of the legality of the arrest, he also claims that the warrantless search was unlawful because the revolver was not seized from an area within his immediate control and was not seized pursuant to any other circumstance indicating the necessity of an immediate, warrantless search.

At the hearing on the motion to suppress, Officer Josephus Reynolds, a member of the St. Louis Metropolitan Police Department, testified that on June 24, 1972, around 10:00 a. m., he received a telephone call from some person who informed him that Henry Henderson and Lou Charles Hopson were responsible for the robbery and shooting at 2431 Dickson. Officer Reynolds knew the caller and had received previous information from the caller that had subsequently led to arrests and convictions. Approximately ten minutes after receiving this call, Officer Reynolds arrived at 2431 Dickson and relayed the information concerning Henderson and Hopson to Sergeant Philip Antoon. Among those policemen present at the scene of the crime with Sgt. Antoon were Detectives James McCarty and James Dowd and Officer Joseph Burgoon. Officer Burgoon testified that he was informed by Sgt. Antoon that Henry Henderson of 2431 Dickson, Apt. 613, and Charles Hopson of 2431 Dickson, Apt. 303, were the persons responsible for the shooting. When Officer Burgoon received this information, he was standing in the areaway outside Apt. 303 with Detective Dowd. Immediately thereafter, a man who identified himself as Henry Henderson walked down the stairs from the fifth to the fourth floor. In response to a question asked by Sgt. Antoon, Henderson stated that he was coming from his mother's apartment and that he had

been there all morning. In order to verify Henderson's statement, the officers accompanied him to the apartment, but found that his mother was not home. The officers then searched Henderson's room with his permission and with him present but found nothing. The officers then walked into a hallway whereupon Henderson ran to the door of another bedroom, blocked the door and told the officers they could not enter. Officer Burgoon then informed Henderson he was under arrest and advised him of his constitutional rights. Henderson then backed into the bedroom to a position about two to three feet from a bed. Officer Burgoon followed Henderson into the bedroom, raised the mattress of the bed and found a .38 caliber revolver. Although he did not feel threatened by Henderson, Officer Burgoon said Henderson could have reached the bed with a fast movement. Prior to the discovery of the pistol, Officer Burgoon said that he did not see any officer search Henderson's person.

Defendant Henderson testified in his own behalf at the hearing. He testified that his sister was present at the apartment at the time the officers arrived. He said the officers entered the apartment with neither his nor his sister's permission, and that the officers conducted a search of the apartment without his consent. At the conclusion of the evidence, the court overruled the motion to suppress.

■ Generally, a warrantless search is an unreasonable one under the fourth amendment unless it is conducted within well-noted exceptions to the warrant requirement. The exceptions are based upon the principle that searches of limited scope may be conducted if they are incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 471, 38 L.Ed.2d

427 (1973). We, therefore, must first determine the legality of the defendant's arrest.

■ The test for determining the legality of an arrest without a warrant for a felony is whether the arresting officer had reasonable grounds or probable cause to suspect that the person arrested has committed a felony. State v. Gant, 490 S.W. 2d 46, 47 [4] (Mo.1973).[1] While this test demands that the knowledge possessed by the arresting officer be more than mere suspicion, it does not require that it be based upon evidence sufficient to support a conviction. State v. Gant, *supra*, 490 S. W.2d at 48 [3]. Given these general guidelines, the outcome in each case depends upon the factual information possessed by the arresting officer at the time of arrest.

■■ Part of the information possessed by the officers at the time of defendant's arrest was that provided by an informant: the names of the two individuals allegedly responsible for the shooting. One of those named was Henry Henderson. This informant had on previous occasions provided the police with information which had led to arrests and convictions. Although information given by an informer who is reasonably considered reliable may in itself justify an arrest (State v. Gant, *supra*, at 48 [5]), the officers possessed additional information at the time of arrest which, when combined with that given by the informant, certainly provided them with reasonable grounds to suspect that defendant had committed a felony. The officers knew that a shooting which resulted in one person's death had occurred in defendant's apartment building within approximately an hour before the officers saw defendant coming down the stairs. The officers were also aware that, after they had searched defendant's bedroom with his

---

1. Popularly denominated by courts as probable cause. *See* State v. Gant, 490 S.W.2d 46, 47 [2–5] (Mo.1973). *See also* Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964) where the court states the test: "[W]hether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543."

consent, defendant blocked the doorway to another bedroom in the apartment and told the officers they could not enter it. Once this occurred, Officer Burgoon immediately placed defendant under arrest. Coupled with the knowledge of the crime itself and the information provided by the informer, defendant's conduct subsequent to the search of his own bedroom gave the officers, including Officer Burgoon, reasonable ground to suspect that defendant participated in the shooting which the officers were investigating. The knowledge possessed by the officers at the time of defendant's arrest rose far above mere suspicion. That arrest was therefore not only justifiable but lawful.

■ Having concluded that defendant's arrest was lawful, it is then necessary to determine whether the subsequent warrantless search of the bedroom which resulted in the seizure of the revolver was constitutionally permissible. We rely on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) in which the Supreme Court outlined the permissible scope of a warrantless search incident to a lawful arrest.

In *Chimel* the Supreme Court held that in order for a warrantless search to be reasonable under the fourth and fourteenth amendments once an arrest has been made it must be limited to a "search of the arrestee's person and the area 'within his immediate control' * * *". 395 U.S. at 763, 89 S.Ct. at 2040. Since the search in this case took place in the bedroom to which the defendant had tried to bar the officer's entry, the issue here is whether the place from which the revolver was seized was an area within defendant's immediate control at the time of the search and seizure.

Here, defendant was arrested as he tried to bar entry to a bedroom in the apartment. As defendant backed into the bedroom, he was followed by the arresting officer, Burgoon, and two other officers. Officer Burgoon proceeded immediately to

a bed which was positioned approximately three feet from defendant, lifted the mattress, discovered and seized a .38 caliber revolver. Officer Burgoon stated that the defendant was not handcuffed at the time, and that although he did not feel threatened by defendant, defendant could have reached the bed with a fast movement.

In *Chimel,* the court construed the area within an arrestee's immediate control "to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. at 763, 89 S.Ct. at 2040. *See* Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). In this case the mattress under which the revolver was found stood three feet from the defendant, easily accessible to him.

Defendant, however, argues that the mattress was not in an area within his immediate control. He cites Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and United States v. Mapp, 476 F.2d 67 (2d Cir. 1973) for support. Both cases are factually distinguishable from the one now before us. In *Coolidge* the court held unconstitutional a warrantless seizure and subsequent search of an automobile. The court noted that the search and seizure could not be justified under any theory because "[t]he police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property." 403 U.S. at 472, 91 S.Ct. at 2041. In this case the officers responded to the scene immediately after the crime occurred, and they had neither knowledge of a revolver nor the intent to seize it. In *Mapp* the court held that the warrantless search of a closed closet in defendant's one-bedroom apartment with one officer standing between the closet and the defendant and with five or six other officers present could not be justified under *Chimel.* In this case defendant had just been placed under arrest when he started backing toward the mattress, and there was no officer standing between him

**820**

and the mattress at that time who might have easily interceded if he had tried to reach the mattress with a fast movement.

■ Defendant next contends that the trial court erred in denying his motion to suppress the blue scarf found outside the apartment building on the grounds that the testimony regarding it was irrelevant and prejudicial. The motion to suppress evidence filed by the defendant before trial did not contain objections to the admission of any evidence upon the grounds of either relevancy or prejudice. This motion confined its objection to any evidence discovered as a result of an illegal search and seizure. The motion did not specifically mention a blue scarf, but rather, sought to suppress "any and all evidence". And, at the hearing on the motion to suppress, no testimony concerning a blue scarf was ever given. Rule 25.06(e), V.A.M.R., requires a trial court to disregard any motion which does not clearly specify "the defense or grounds of objection relied upon by the defendant * * *." Although the motion to suppress specified an illegal search and seizure as a ground of objection, the trial court could not possibly have committed error in overruling defendant's motion upon the grounds of either relevancy or prejudice as these grounds of objection were not before the court when it heard and determined defendant's motion to suppress. *See* State v. Crow, 486 S.W.2d 248, 257 [25] (Mo.1972).

But defendant also contends that the trial court erred in allowing all testimony at trial concerning the scarf, including photographs of and a property receipt for the scarf, to be admitted into evidence "because the blue scarf was not relevant and tended only to confuse the issues and prejudice the jury." The state claims that defendant has not preserved this point for appellate review because he failed to make timely and proper objections to the testimony concerning the blue scarf.

The first time the prosecuting attorney attempted to elicit testimony concerning

the blue scarf found on the ground outside the defendant's apartment, defendant objected to such testimony on the ground that it would not be relevant; that no foundation had been laid linking him to the scarf found outside his apartment. He also objected to the admission of the photographs of the scarf. The relevancy of the testimony concerning the scarf and the photographs of the scarf found on the ground outside the defendant's apartment is an issue the defendant has preserved for review. Defendant's objections were made both timely and with sufficient specificity to inform the trial court of the nature of the challenge, and the objections were repeated in his motion for new trial.

Defendant argues that the photographs of and the testimony concerning the scarf found on the ground outside his apartment were irrelevant and prejudicial because the scarf was not shown to be connected with him. He argues that the mere fact that a blue scarf was found outside his apartment building is not of sufficient strength to support an inference that he was one of the two assailants involved in the crime. While we agree with defendant that the testimony concerning and the photographs of the scarf do not support this inference and are of little evidentiary value if considered standing alone, there are other reasons supporting the trial court's decision to admit this evidence.

■■ Testimony concerning any physical object connected with the crime which tends to show the manner in which the crime occurred may be admitted into evidence. State v. Parr, 296 Mo. 406, 246 S.W. 903, 905 [3] (1922). Such testimony is admissible where the physical object is found near the scene of the crime subsequent to its commission even though the object is not otherwise connected with the defendant. State v. Parr, *supra*, at 905 [3]. Here, the scarf was found near the scene of the crime, within five to six feet of the building in which the assault took place, under the window of defendant's apart-

ment, and it sheds some light on the manner in which the crime occurred since Jolly Doyle testified that the assailants had their faces covered with blue scarves. This corroborated Doyle's testimony concerning the description of his assailants. And, evidence is held to be admissible if it has probative value in establishing conditions and if it corroborates witnesses' testimony on the issues of the case. State v. Mucie, 448 S.W.2d 879, 887 [4] (Mo.1970), cert. den. 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1970).

■ In addition, evidence is considered admissible if it bears upon a material matter at issue in a case. State v. Edwards, 435 S.W.2d 1, 7 [9] (Mo.1968). The ultimate material issue to be determined in every criminal case is whether the defendant is guilty beyond a reasonable doubt of the crime for which he stands charged. In order to make this ultimate determination, a number of other material issues must be determined. Among these issues is a question which is closely connected with the ultimate issue—whether or not the defendant can be identified as the perpetrator of the crime. At the trial, Doyle testified that he was unable to identify the defendant as one of the assailants. Since Doyle was the only witness present at the scene of the crime at the time the assault took place who testified at trial, his inability to identify defendant was a material matter at issue in this case. Evidence explaining this inability was offered. Doyle testified that both assailants had their faces covered with thin blue scarves. To support this explanation, testimony concerning and photographs of a blue scarf found under a window of defendant's apartment near the scene of the crime were admitted into evidence. This latter evidence, the evidence here objected to by the defendant, strengthened Doyle's explanation of his inability to identify defendant as one of the assailants. As such it was probative on the question of identification of the defendant as one of the assailants, a material issue in this case.

■ Trial courts have some discretion in admitting circumstantial evidence even though inconsistent inferences may be logically drawn from it. State v. Fields, 434 S.W.2d 507, 516 [7] (Mo.1968). In State v. Casey, 338 S.W.2d 888 (Mo.1960), a prosecution for first-degree robbery, a portion of a lady's nylon stocking was held to be admissible, although it was not shown to have belonged to the defendant, nor was it identified as one of the masks used in the robbery, nor was it found either in defendant's possession or under his control. In *Casey* there was testimony that this portion of the stocking was similar in color and texture to another lady's stocking which had been admitted into evidence, and there was testimony that the stocking was identical in color and similar in other respects to the stocking masks on the faces of the robbers. There was other circumstantial evidence in *Casey* linking the defendant with the robbery. Here, as in *Casey*, there was no evidence connecting defendant with the scarf, and although Doyle could not identify the scarf found as one of the scarves worn by the assailants, he did testify that the scarf found was similar in color and texture to the scarves worn by the assailants. And, as in *Casey*, there was other circumstantial evidence in this case linking defendant to the crimes charged.

We are of the opinion that the trial court did not err in admitting the evidence concerning the scarf subsequently found near the scene of the crime.

■ Defendant also objects to that portion of the prosecuting attorney's closing argument to the jury which implied that the scarf found outside the defendant's apartment building was thrown from an open window in defendant's apartment. Defendant claims that this argument exaggerated the probative value of the scarf, causing unfair prejudice to him. Although defendant objected to this argument at the time it was made, he made no reference to it in his motion for new trial. Any claim of error not assigned in the motion for

new trial is not preserved for appellate review. State v. Bowens, 476 S.W.2d 495, 498 [5] (Mo.1972); Rule 27.20(a), V.A. M.R. In any event, had defendant preserved this contention for our review, the argument is unobjectionable. It is true that the jury could have logically inferred that the scarf was not thrown out a window of defendant's apartment. But the jury also could have logically inferred the scarf was discarded in a manner consistent with the prosecuting attorney's suggestion. Since it is solely within the province of the jury to determine which inference shall be drawn from facts where different inferences may be logically drawn therefrom, the trial court properly overruled defendant's objection to this portion of the prosecuting attorney's argument. State v. Selle, 367 S.W.2d 522, 527 [16] (Mo.1963).

Defendant next contends that the trial court erred in allowing certain witnesses to testify about defendant's refusal to permit police to enter or search the bedroom of the apartment in which the revolver was discovered. He argues that because his conduct in this regard was an assertion of his fourth amendment right to be free from unreasonable searches and seizures, any testimony or any comment on this conduct is impermissible. Although defendant waived this claim by failing to object at the earliest fair opportunity [State v. Simmons, 500 S.W.2d 325, 328 [2] (Mo.App.1973)], we may consider a claim involving an alleged violation of a federal constitutional right to determine whether it constitutes plain error under Rule 27.20(c). State v. Hammonds, 459 S.W.2d 365, 369 [8] (Mo.1970); State v. Coyne, 452 S.W.2d 227, 228 [1] (Mo.1970).

In support of his position defendant cites Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) which held that neither the trial court nor the prosecutor may comment upon the defendant's failure to testify. 380 U.S. at 615, 85 S.Ct. 1229, 14 L.Ed.2d 106. The constitutional right involved in *Griffin* was the fifth amendment's guarantee that no person can be compelled to be a witness against himself in a criminal case. The constitutional right involved here is the fourth amendment's right to be free from unreasonable searches and seizures. Unlike the fifth amendment's right against self-incrimination which by its language is unqualified, the fourth amendment's right is qualified by and is dependent upon the reasonableness of the particular search and seizure. There is no constitutional right to be free from searches and seizures, only unreasonable searches and seizures. Since we have already decided that the search and seizure in this case were not unreasonable, the testimony and comments concerning defendant's refusal to allow the police to enter or search the bedroom in which the revolver was discovered did not amount to comments upon defendant's constitutional right under the fourth amendment.

Additionally, in reaching the decision that the search and seizure in this case was not an unlawful one, we decided that the search was incident to a lawful arrest upon probable cause. One of the factors bearing upon probable cause was defendant's conduct in refusing to allow the police to enter or search the bedroom. Such conduct clearly heightened the degree of suspicion the officers were then focusing on defendant for defendant was arrested immediately after he announced this refusal. Under these circumstances, the testimony concerning this conduct was admissible both to show the circumstances surrounding his arrest [State v. Starks, 459 S.W.2d 249, 250 [3] (Mo.1970)], and to show consciousness of guilt or a desire to conceal the crime [State v. Ruckman, 222 S.W.2d 74, 75 [4] (Mo.1949)]. Accordingly, we rule this point against defendant.

For his fourth point defendant claims that the trial court erred in instructing the jury on second degree murder because the only submissible issue of guilt was that of first degree murder. He argues that ·the

giving of this instruction prejudiced his right to a fair trial.

■ In a homicide prosecution instructions on all degrees of homicide should not be given automatically, but should only be given if there is evidence to support them. *See* MAI–CR § 6.02, Note 6. Indeed, if the evidence in a particular case warrants the giving of a second degree murder instruction the trial court has a duty to give it whether requested or not. State v. Glenn, 429 S.W.2d 225, 234 [14] (Mo. banc 1968). The distinction between first and second degree murder is the absence of the element of deliberation in the latter. State v. Sturdivan, 497 S.W.2d 139, 142 [6] (Mo.1973); State v. Stevens, 467 S.W.2d 10, 24 [21] (Mo.1971), cert. den. 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971). Deliberation is absent whenever the homicide occurs at a time when the defendant is aroused by some provocation to such a degree of passion as to interfere with judgment and reason. State v. Sturdivan, *supra*, 497 S.W.2d at 142 [6]. In other words, defendant must not have coolly and fully reflected upon his intent to take the life of the victim before so doing. *See* MAI–CR § 6.02.

■ In this case there was some evidence that the fatal wound was inflicted upon provocation since Jolly Doyle testified that, after being told not to move, he "charged" one of the assailants. On the other hand, there was also some evidence that the fatal wound may have been inflicted without provocation since Doyle also testified that he heard a pistol shot before he moved toward the assailant. As we read the record in this case, there is scant evidence from which the jury could have inferred either the presence or absence of deliberation. Although the jury would have been justified in finding every element of first degree murder, as the court also gave a first degree murder instruction in this case, the jury could have believed that the fatal wound was inflicted without deliberation. Absent evidence

which compels a finding of deliberation, the question is for the jury to determine, and, accordingly, the trial court did not err in giving the second degree murder instruction. State v. Stevens, *supra*, 467 S. W.2d at 24 [21].

■ For his final claim of error, defendant objects to certain remarks concerning a .38 caliber revolver made by the circuit attorney in his closing argument to the jury. The specific remarks objected to are: "If you want to put this defendant back on the street, I will give him his .38 and he can go back, * * *." And later in the argument: "So, I say now the only thing that has to be done—you have to have courage to tell by your verdict, the dignity of your verdict, that you warn others in this community; second, that you punish him; and third, that you give the Department of Corrections sufficient time to work on his rehabilitation, if possible. If you don't feel that way, he takes his .38 and goes back there—". Only after this latter remark did the defendant object. Defendant, however, did not state the grounds for his objection. When the trial court did not rule on defendant's general objection, defendant neither asked for a ruling nor requested any other relief. Under these circumstances, this point was not preserved for appellate review. State v. Martin, 484 S.W.2d 179, 180 [1] (Mo. 1972). Furthermore, the circuit attorney's remarks here were not such as to have impaired defendant's substantive rights under Rule 27.20(c). We cannot conclude that these remarks were designed either to arouse the jurors' personal hostility or to cause the jurors fear for their personal safety. Nor did the remarks constitute an effort by the circuit attorney to place his personal opinion of defendant's guilt before the jury. *See* State v. Martin, *supra*, at 180 [2].

■ The state has moved that the sentence be set aside and the defendant be remanded for re-sentencing to consecutive sentences under § 546.480, RSMo 1969, V.

A.M.S. This section does not apply when sentences are pronounced upon convictions under multiple count indictments and informations filed in accordance with Rule 24.04. The motion is therefore denied.

Judgment is affirmed.

DOWD, C. J., and SIMEONE, J., concur.